P. RANDOLPH FINCH JR., SBN 185004
E-MAIL: pfinch@ftblaw.com
JON F. GAUTHIER, SBN 101724
E-MAIL: jgauthier@ftblaw.com
THOMAS E. DIAMOND, SBN 323333
E-MAIL: tdiamond@ftblaw.com

**FINCH, THORNTON & BAIRD, LLP**
ATTORNEYS AT LAW
4747 EXECUTIVE DRIVE – SUITE 700
SAN DIEGO, CALIFORNIA 92121-3107
TELEPHONE: (858) 737-3100
FACSIMILE: (858) 737-3101

Attorneys for Plaintiff Civil Prime General Engineering, Inc.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA for the use and benefit of CIVIL PRIME GENERAL ENGINEERING, INC., a California corporation,<br><br>    Plaintiff,<br><br>v.<br><br>GREAT AMERICAN INSURANCE COMPANY, an Ohio corporation, K.O.O. CONSTRUCTION, INC., a California corporation,<br><br>    Defendants. | CASE NO:   **'19CV0428 GPC NLS**<br><br>COMPLAINT FOR:<br><br>(1)   RECOVERY ON MILLER ACT PAYMENT BOND;<br>(2)   BREACH OF CONTRACT; AND<br>(3)   REASONABLE VALUE.<br><br>**DEMAND FOR JURY TRIAL** |

<u>GENERAL ALLEGATIONS</u>

1.    This action is brought pursuant to, and jurisdiction is conferred by, Title 40, United States Code, sections 3131 through 3133.  This Court also has pendent or ancillary jurisdiction of claims brought under California law.

2.    Venue in this Court is proper as the contract for which the Miller Act payment bond was issued was to be performed in this judicial district of the United States.

/ / / / /

/ / / / /

/ / / / /

COMPLAINT

3.     Use-plaintiff Civil Prime General Engineering, Inc. ("Civil Prime") is, and at all relevant times was, a corporation duly organized and existing under and by virtue of the laws of the State of California and licensed to perform the work described below.

4.     Defendant Great American Insurance Company ("Great American") is, and at all relevant times was, a purported Ohio corporation purportedly authorized and licensed to do business and doing business as a surety issuing bonds required by law or contract by the United States of America and various agencies within the jurisdiction of this Court.

5.     Defendant K.O.O. Construction, Inc. ("K.O.O.") is, and at all relevant times was, a purported California corporation purportedly authorized and licensed to do business and doing business as a contractor within the State of California, Southern District of California, with its principal place of business at 2510 Boatman Avenue, West Sacramento, California 95691.

<u>FIRST CLAIM FOR RELIEF</u>

(Breach of Contract – Against K.O.O.)

6.     Civil Prime realleges and incorporates by reference paragraphs 1 through 5, above, as though set forth in full at this point.

7.     Civil Prime is informed and believes that K.O.O., as the general contractor, entered into written Contract No. N62473-09-D-1655, Task Order 0005 (the "Prime Contract"), with the United States of America, acting by and through the Naval Facilities Engineering Command Southwest ("NAVFAC") pursuant to which K.O.O. agreed to construct, alter, or repair a public building or work of improvement known as the P888 SOF Close Quarter Combat and Dynamic Shooting Facility at Camp Michael Monsoor located in Pine Valley, California (the "Project").

/ / / / /

/ / / / /

/ / / / /

FINCH, THORNTON &
BAIRD, LLP
4747 Executive
Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

2

COMPLAINT

8.     On or about June 29, 2017, K.O.O. entered into a written subcontract with Civil Prime (the "Subcontract") pursuant to which Civil Prime would perform grading work on the Project in exchange for payments by K.O.O. of $1,320,434.00 (the "Subcontract Price"). A true and correct copy of the Subcontract is attached as Exhibit "1" and is incorporated by reference as though set forth in full at this point.

9.     During Civil Prime's performance of the Subcontract, K.O.O. requested Civil Prime perform additional work for an increase to the Subcontract Price of $1,195,941.74.

10.    Civil Prime has fully and completely performed all obligations required to be performed by the Subcontract including the additional work, except as waived or excused, and all of the conditions precedent to the performance on the part of Great American have occurred.

11.    On September 27, 2018, K.O.O. terminated the Subcontract pursuant to the Subcontract's provisions on Termination for Convenience.

12.    K.O.O. breached the Subcontract by failing to timely and fully pay Civil Prime for the labor, services, materials, supplies, or equipment Civil Prime furnished to the Project.

13.    To date, K.O.O. failed to pay Civil Prime at least $505,595.16 due, owing and unpaid to Civil Prime.

14.    As a result of K.O.O.'s failure and refusal to pay, Civil Prime has been damaged in an amount not yet fully ascertained and according to proof at trial, but at least $505,595.16, together with interest, statutory penalties and charges, at the maximum legal rates from dates according to proof.

SECOND CLAIM FOR RELIEF

(Reasonable Value – Against K.O.O.)

15.    Civil Prime realleges and incorporates by reference paragraphs 1 through 14, above, as though set forth in full at this point.

/ / / / /

FINCH, THORNTON &
BAIRD, LLP
4747 Executive
Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

3

COMPLAINT

16.     Within the last two years, Civil Prime furnished labor, services, materials, supplies, or equipment to the Project at the special request of K.O.O. Civil Prime enriched and conferred benefits upon K.O.O. by furnishing such labor, services, materials, supplies, or equipment.  Civil Prime did not intend or expect to confer, and did not confer, those benefits gratuitously.

17.     Civil Prime has incurred losses by furnishing such labor, services, materials, supplies, or equipment to the Project and by not being paid in full.

18.     The total and reasonable value of the benefits conferred by Civil Prime to K.O.O. is not yet fully ascertained but is at least $505,595.16, and this amount together with interest, statutory penalties, and charges at the maximum legal rate from dates according to proof is due from K.O.O. to Civil Prime.

<u>THIRD CLAIM FOR RELIEF</u>

(Recovery on Miller Act Payment Bond Against Great American)

19.     Civil Prime realleges and incorporates by reference paragraphs 1 through 18, above, as though set forth in full at this point.

20.     Civil Prime is informed and believes that under United States Code, Title 40, sections 3131 through 3134, defendant K.O.O., as principal, and defendant Great American, as surety, executed and delivered a payment bond number CA3159160 (the "Payment Bond") to NAVFAC whereby Great American bound itself for the purpose of allowing a joint action or actions against it, and bound itself in the sum of $12,000,000.00.  A true and correct copy of the Payment Bond is attached as Exhibit "2" and is incorporated by reference as though set forth in full at this point.

21.     The Payment Bond was delivered to and accepted by NAVFAC and inures to the benefit of Civil Prime.

/ / / / /

/ / / / /

/ / / / /

FINCH, THORNTON &
BAIRD, LLP
4747 Executive
Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

4

COMPLAINT

22.     Great American has failed and refused to perform its obligations under the Payment Bond, in that only part of the revised Subcontract Price has been paid and Civil Prime remains owed sums for the labor, services, materials, supplies, or equipment it provided to the Project at the direction of K.O.O.

23.     Civil Prime last furnished labor, services, materials, supplies, or equipment to the Project within one year immediately preceding the date this complaint was filed.

24.      Civil Prime is not required to provide K.O.O. or Great American with written notice of its claim within 90 days of completion of its work because of its direct contractual relationship, express or implied, with K.O.O.

25.     As a direct and proximate result of K.O.O.'s breaches of the Subcontract, Civil Prime has been damaged in the amount of at least $505,595.16, together with interest, statutory penalties, and charges at the maximum legal rates from dates according to proof.

26.     Under the Payment Bond, Great American is obligated to pay Civil Prime the amounts alleged.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, the United States of America, for the use and benefit of Civil Prime, requests judgment as follows:

<u>ON ALL CLAIMS FOR RELIEF</u>

1.      For general, special, and consequential damages in an amount not yet fully ascertained and according to proof at trial, but at least $505,595.16;

2.      For interest, statutory penalties and charges on all sums at the maximum legal rates from dates according to proof;

3.      For costs of suit; and

/ / / / /

/ / / / /

/ / / / /

FINCH, THORNTON &
BAIRD, LLP
4747 Executive
Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

5

COMPLAINT

1      4.      For such other relief the Court deems just and proper.

2   DATE:  March 4, 2019                      Respectfully submitted,

3                                              FINCH, THORNTON & BAIRD, LLP

4

5                                              By:_____

6                                                 P. RANDOLPH FINCH JR.
                                                  JON F. GAUTHIER
7                                                 THOMAS E. DIAMOND
                                              Attorneys for Plaintiff Civil Prime General
8                                              Engineering, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FINCH, THORNTON &
BAIRD, LLP
4747 Executive
Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

6

COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Civil Prime hereby demands trial by jury in this action of all issues so triable.

DATE:  March 4, 2019

Respectfully submitted,

FINCH, THORNTON & BAIRD, LLP

By: _____
P. RANDOLPH FINCH JR.
JON F. GAUTHIER
THOMAS E. DIAMOND
Attorneys for Plaintiff Civil Prime General Engineering, Inc.

2569.002/3DW9081.aem

FINCH, THORNTON &
BAIRD, LLP
4747 Executive
Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

7

COMPLAINT

# EXHIBIT 1

Signed Contract Back:           Y   N
Insurance Cert Back:            Y   N
Signed Schedule of Values:      Y   N
Signed Standard Form 1413:  Y   N

# K.O.O. CONSTRUCTION, INC.
## SUBCONTRACT AGREEMENT

WITNESSETH:

DESCRIPTION OF CONSTRUCTION PROJECT: Subcontractor agrees to furnish all necessary labor, materials, tools, equipment and supplies necessary to perform, and to perform all work set forth in "Section 2" hereof in the construction of:

CONTRACT NO. N62473-09-D-1655,
0005, P888 SOF Close Quarter Combat and Dynamic Shooting Facility
Camp Michael Monsoor, Pine Valley, CA

in accordance with the Terms and provisions of the Contract between Owner and Contractor, dated ___30 Sept 2014___, Including the General and Special Conditions Drawings and Specifications and other Documents forming or by reference made a part of said Contract hereinafter called the General Contract, all of which shall be considered part of this Subcontract by reference hereto, and Subcontractor agrees to be bound to Contractor and Owner by the terms and provisions thereof.

This Agreement is made at ___Sacramento, CA___ this __29th__ day of __June__, 20_17_ between:

## CONTRACTOR

Name ___K.O.O. Construction, Inc.___

Address ___2510 Boatman Avenue___

City ___West Sacramento___     State ___CA___   Zip ___95691___

Phone ___(916) 371-3388___     Fax ___(916) 371-1188___

and

## SUBCONTRACTOR

Name ___Civil Prime General Engineering___

Address ___1940 54th Street___

City ___San Diego___     State ___CA___   Zip _____

Phone ___(619) 501-0400___     Fax ___(619) 501-0402___

On or about the ___21st___ day of ___June___, 20 _16_, Contractor entered into a prime contract to perform the following work:

1371060 3

## SECTION 1. ENTIRE CONTRACT

The phrase "Contract Documents" is defined to mean and include:

The plans, consisting of all bid set Sheets, Specifications, Special and General Conditions, Addenda and Illustrative Details, this subcontract, the Contract with the General Contractor, and the General Contractor's Prime Contract with the Owner and any attachments included within.

a) The terms "Contract" and "Prime Contract" may be used herein refer to the Contract between the Owner and Contractor for construction of the Project.

b) The term "Contract Documents" as used herein refers to the "Contract" between the Owner and the Contractor, together with all Drawings, Specifications, General Conditions, Supplemental General Conditions, Special Conditions, Addenda, Amendments and all other instruments issued by or on behalf of the Owner and / or prepared by the Architect for the Project, together with all other documents or instruments referred to in the aforesaid "Contract" and "Contract Documents".

c) The term "Subcontract" as used herein refers to this Subcontract together with any exhibits, attachments, or addenda, including without limitation all of the General Terms incorporated herewith and referred to herein.

d) The term "Subcontract Documents" as used herein refers to the "Contract", "Contract Documents" and "Subcontract".

e) In the event of a conflict between any of the Subcontract Documents, the documents shall take precedence in the following order and the one taking precedence controls the one(s) following:

   i) The Contract, together with all Change Orders, modifications and exhibits;

   ii) The Contract Documents in the order listed in the Contract;

   iii) The Subcontract, together with all Change Orders and exhibits, provided, however, the Subcontract shall control when the provisions of the Subcontract require stricter performance by the Subcontractor.

   iv) Any document prepared by Subcontractor that is attached to or made part of this Subcontract (such as a proposal or scope of work) ("Proposal"). In the event a Proposal is attached to or made part of this Subcontract, all other Subcontract Documents shall take precedence over the Proposal and all the Proposal's terms, and in the event of any conflict between the Subcontract Documents and the Proposal, the Subcontract Documents other than the Proposal shall control over any conflicting provision in the Proposal.

f) Subcontractor specifically agrees to perform in accordance with the provisions of the "Contract Documents", provided, however, nothing in the Contract Documents shall be construed to limit any and all actual damages that may be incurred by Contractor and recovered by Contractor from Subcontractor as a result of any default by Subcontractor. Subcontractor agrees that he/has read the "Contract Documents" and copies were made available for Subcontractor and Subcontractor agrees and acknowledges that he shall similarly make copies of such documents available to his Sub-Subcontractors, if any, and that all such Sub-Subcontractors will agree to be bound by the Contract Documents and Subcontract Documents.

g) The following clauses are incorporated by reference into this subcontract agreement.

- Far Clause 52.228-5 Insurance-work on Government Installation
- Far Clause 52.203-6 Restrictions on subcontractor sales to the Government
- Far Clause 52.222.23 Equal Employment Opportunity for construction
- Far Clause 52.222-21 Prohibition of Segregated Facilities
- Far Clause 52.222-35 Equal Opportunity for special disabled veterans
- Far Clause 52.223-14 Toxic chemical release reporting
- Far Clause 52.225-9 Buy American Act – Construction materials
- Far Clause 52.225-15 Restrictions on certain foreign purchases
- Far Clause 52.227-1 Authorization and consent
- Far Clause 52.222-4 Contract work hours and Safety Standards Act – Overtime Compensation – Construction
- Payrolls and Basic Records
- Withholding of Funds
- Disputes Concerning Labor Standards
- Davis-Bacon Act
- Apprentices and Trainees
- Compliance with Copeland Regulations
- Far Clause 52.244-2 Subcontracts
- Contract Termination – Debarment
- Certification of Eligibility
- Far Clause 52.232.27 Prompt Payment For Construction Contracts

Subcontractor certifies that he is fully familiar with all of the terms of the Contract Documents, the location of the jobsite, and the

conditions under which the work is to be performed and that he enters into this Agreement based upon his investigation of all such matters and is not relying on any opinions or representations of Contractor. This Agreement represents the entire agreement. The Contract Documents are incorporated in this Agreement by reference, and Subcontractor and his subcontractors will be and are bound by the Contract Documents insofar as they relate in any way, directly or indirectly, to the work covered by this Agreement. Subcontractor agrees to be bound to Contractor in the same manner and to the same extent as Contractor is bound to Owner under the Contract Documents, to the extent of the work provided for in this Agreement, and that where, in the Contract Documents reference is made to Contractor, and the work or specifications therein pertains to Subcontractor's trade, craft, or type of work, then such work or specification shall be interpreted to apply to Subcontractor instead of Contractor.

## SECTION 2. SCOPE OF SUBCONTRACTOR'S WORK

Subcontractor agrees to furnish all labor, materials, equipment and other facilities/appurtenance required to perform and complete the work or entire system:

- ➤ Mobilization
- ➤ Clear and Grub, Demo (Includes Well Sites)
- ➤ Remedial Excavation (Includes CQC Building)
- ➤ Common Excavation (Includes Stockpiling)
- ➤ Select Fill Slope Pistol Range/ Rifle Range
- ➤ Finish Grade
- ➤ Rip Rap Channels (4,961 cyd x 1.62 yds/ton)
- ➤ Install D.G.
- ➤ Install Class II Aggregate Base
- ➤ Re-Spread Topsoil
- ➤ Additive Alternate 1, Expose, Cap, Excavate, Stockpile, and Backfill $ 36,224.00, Subcontractor Change Order will be issued if exercised.
- ➤ Additive Alternate 2, Sort Rock For Onsite Use $33,824.00, Subcontractor Change Order will be issued if exercised.

It is agreed that this contract agreement takes precedence over the proposal

1. It is understood that you will be the responsible party for all paperwork required, per job including submittals, should you subcontract any portion of work awarded to your company by K.O.O. Construction, Inc. This shall include ensuring that all insurance requirements, which you are required to meet, are met by your subcontractor and ensuring that all certified payroll reports are submitted on the project.

Certified payroll must be submitted by the party(s) working on the project.

Note: Subcontractor cannot start any on site work until all submittals are submitted and approved.

**Important**    Insurance Certificates in the amount required are necessary before the subcontractor can begin his work on site. This is a certified payroll job. All certified labor reports shall be in our possession and based on the most recent rules and laws as defined by the Federal Department of labor and Far Clause prior to any payment by Contractor. The terms and conditions of this Subcontract supersede any terms, conditions or notations in Subcontractor's bid or proposal unless specifically repeated on our "Supplemental Subcontract Form". Similarly, the terms and conditions of this subcontract supersede any oral and written terms of understanding unless specifically repeated.

For the project in accordance with the Contract Documents and as more particularly specified in:

See Section 1. Entire Contract, Above

1375069-2                                                   3

In the event of any dispute between Contractor and Subcontractor over the scope of Subcontractor's work under the Contract Documents, Subcontractor will not stop work but will prosecute the work diligently to completion, the dispute to be submitted for resolution in accordance with Section 17 below.

## SECTION 3. CONTRACT PRICE

Contractor agrees to pay Subcontractor for the strict performance of his work, the sum of: **One million three hundred twenty thousand four hundred thirty-four & 00/100 ($ 1,320,434.00)**, subject to additions and deductions for changes in the work as may be directed in writing by Contractor, and to make payment in accordance with the Payment Schedule, Section 4.

## SECTION 4. PAYMENT SCHEDULE

Contractor agrees to pay to Subcontractor in monthly progress payments of ~~Ninety~~ *Ninety Five* percent (~~90~~ *95*%) of labor and materials which have been placed in position, with funds received by Contractor from Owner for work performed by Subcontractor as reflected in Contractor's applications for payment. Such monthly progress payments shall be made (14) days after receipt of payment from the Owner by Contractor. Final payment to Subcontractor shall be made ten (10) days after the entire work required by the prime contract has been fully completed in conformity with the Contract Documents and has been delivered to and accepted by Owner, Architect, and Contractor, with funds received by Contractor from Owner in final payment for work under the prime contract. Subcontractor agrees to furnish, if and when required by Contractor, payroll affidavits, receipts, vouchers, releases of claims for labor, material, and from his subcontractors performing work or furnishing materials under this Agreement, all in form satisfactory to Contractor, and it is agreed that no payment hereunder shall be made, except at Contractor's option, until and unless such documents have been furnished. Contractor, at his option, may make any payment due hereunder by check made payable jointly to Subcontractor and any of his subcontractors, suppliers and material men who have performed work or furnished materials under this Agreement. Any payment made hereunder prior to completion and acceptance of the work, as referred to above, shall not be construed as evidence of acceptance or acknowledgment of completion of any part of any Subcontractor's work.

**All Payments will be paid based on your approved schedule of values approved on a monthly progress billing as approved by the general contractor. No payments will be made without the prior approval of the general contractor even if previous months conditionals have been sent to our office with a different approval than the owners. No Certified Payroll, payment will be put on hold.**

## SECTION 5. TIME

Time is of the essence of this Agreement. Subcontractor shall provide Contractor within 15 days of Letter of Intent scheduling information and a proposed schedule for performance of his work in a form acceptable to Contractor. Subcontractor shall conform to Contractor's progress schedule and all revisions or changes made thereto. Subcontractor shall prosecute his work in a prompt and diligent manner in accordance with Contractor's progress schedule without delaying or hindering Contractor's work or the work of other contractors or subcontractors. Subcontractor shall coordinate the work covered by this Agreement with that of all other contractors, subcontractors, and of the Contractor, in a manner that will facilitate the efficient completion of the entire work. In the event Subcontractor fails to maintain his part of the Contractor's schedule, he shall, without additional compensation, accelerate the work as Contractor may direct until Subcontractor's work is in accordance with such schedule. Contractor shall have complete control of the premises on which the work is to be performed and shall have the right to decide the time and order in which various portions of the work shall be installed and the relative priority of the work of Subcontractor and other subcontractors; and, in general, all other matters pertaining to the timely and orderly conduct of the work of Subcontractor on the premises. Should Subcontractor be delayed in the prosecution or completion of the work by the act, neglect or default of Owner, Architect or Contractor, or should Subcontractor be delayed waiting for materials, if required by this Contract to be furnished by Owner or Contractor, or by damage caused by fire or other casualty, for which Subcontractor is not responsible, or by the combined action of the workmen, in no way caused by or resulting from fault or collusion on the part of Subcontractor, or in the event of a lock-out by Contractor, then the time herein fixed for the completion of the work shall be extended the number of days that Subcontractor has thus been delayed, but no allowance or extension shall be made unless a claim therefore is presented in writing to Contractor within 48 hours of the commencement of such delay, and under no circumstances shall the time of completion be extended to a date which will prevent Contractor from completing the entire project within the time allowed Contractor by Owner for such completion.

No claims for additional compensation or damages for delays, whether caused in whole or in part by any conduct on the part of Contractor, including, but not limited to, conduct amounting to a breach of this Agreement, or delays by other subcontractors or Owner, shall be recoverable from Contractor, and the above-mentioned extension of time for completion shall be the sole remedy of Subcontractor; provided, however, that in the event Contractor obtains additional compensation from Owner on account of such delays, Subcontractor shall be entitled to such portion of the additional compensation so received by Contractor from Owner as is equitable under all of the circumstances. In the event that Contractor prosecutes a claim against Owner for additional compensation for any delay, Subcontractor shall cooperate fully with Contractor in the prosecution thereof and shall pay costs and expenses incurred in connection therewith, including actual attorneys' fees, to the extent that said claim is made by Contractor at the request of Subcontractor.

Subcontractor shall prepare and obtain approval as required by the Contract Documents for all shop drawings, details, samples, and do all other things necessary and incidental to the prosecution of his work in conformance with Contractor's progress schedule.

## SECTION 6.  CHANGES IN THE WORK

Subcontractor shall make any and all changes in the work described in the Contract Documents and this Agreement as directed by the Contractor's Project Manager or Branch Manager in writing thru the use of a formal subcontract change order.  Field personnel, project job site personnel, are not authorized to approve change orders, additional work, or changes in the work. Such change or written direction shall not invalidate this Agreement.

If necessary, the contract price stated in Section 3 and the time for Subcontractor's performance shall be adjusted by appropriate additions or deductions mutually agreed upon before Subcontractor performs the changed work. Subcontractor shall supply Contractor with all documentation necessary to substantiate the amount of the addition to or deduction from the price or time. If Contractor and Subcontractor cannot agree on the amount of the addition or deletion, Subcontractor shall nonetheless timely perform the work as changed by Contractor's written direction. Once Subcontractor receives Contractor's written direction, Subcontractor is solely responsible for timely performance of the work as changed by the written direction. Changes are subject to the CHANGES Article or Section in the General or Special Conditions of the Specifications, Changes in the Work, and shall include no more than ~~ total overhead and profit for changes by this subcontractor if the total overhead and profit is on a shared basis. 15%

Payment for changed work shall be made in accordance with Section 4. *DB*

Subcontractor shall not make any changes in the work described in Section 2 or in any way cause or allow that work to deviate from the Contract Documents without written direction from Contractors. If Subcontractor makes any changes in the work described in Section 2 without written direction from Contractor, such change constitutes an agreement by Subcontractor that he will not be paid for that changed work, even if he received verbal direction from Contractor or any form of direction, written or otherwise, from Owner or any other person or entity. In addition, Subcontractor shall be liable for any and all losses, costs, expenses, damages, and liability of any nature whatsoever associated with or in any way arising out of any such change he makes without written direction from Contractor.

If a dispute arises between Contractor and Subcontractor about whether particular work is a change in the work described in Section 2, Subcontractor shall timely perform the disputed work and may give written notice of a claim for additional compensation for that work. Such written notice of claim must be given within ten (10) days after such work is performed. Subcontractor's failure to give written notice within the ten (10) days constitutes an agreement by him that he will not be paid for the disputed work.

No change, alteration, or modification to or deviation from this Agreement, the Contract Documents, prime contract, plans, or specifications, whether made in the manner provided in this provision or not, shall release or exonerate, in whole or in part, any bond or any surety on any bond given in connection with this Agreement; and no notice is required to be given to such surety of any such change, alteration, modification or deviation.

## SECTION 7.  DAMAGES CAUSED BY DELAYS

If Subcontractor should default in performance of the work described in Section 2 or should otherwise commit any act which causes delay to the prime contract work, Subcontractor shall be liable for all losses, costs, expenses, liabilities and damages, including consequential damages and liquidated damages, sustained by Contractor, or for which Contractor may be liable to Owner or any other party because of Subcontractor's default.

If subcontractor fails to complete the work identified in Section 2 with in the time specified in the contract schedule, the subcontractor shall pay liquidated damages to the contractor in the amount of $1,480.00 for each calendar day of delay until the work is completed or accepted.

## SECTION 8.  BONDING OF SUBCONTRACTOR

Concurrently with the execution of this Agreement, Subcontractor shall, subcontract, execute a labor and material bond and performance bond, in an amount equal to one hundred percent (100%) of the Contract Price. Said bonds shall be executed by a corporate surety acceptable to Contractor and shall be in a form satisfactory to Contractor. Contractors shall pay one time only the premium on said bonds unless otherwise provided herein or in the Contract Documents.

## SECTION 9.  LIENS

In case suit is brought on any claim or liens for labor performed or materials used on or furnished to the project, Subcontractor shall pay and satisfy any such lien or judgment as may be established by the decision of the court in said suit. Subcontractor agrees within ten (10) days after written demand to cause the effect of any such suit or lien to be removed from the premises, and in the event Subcontractor fail so to do, Contractor is authorized to use whatever means in its discretion it may deem appropriate to cause said lien or suit to be removed or dismissed and the cost thereof, together with actual attorneys' fees, shall be immediately due and payable to Contractor by Subcontractor.

1373069.2                                                                 5

Subcontractor may litigate any such lien or suit provided he causes the effect thereof to be removed, promptly in advance, from the premises, and shall further do such things as may be necessary to cause Owner not to withhold any monies due to Contractor from Owner by reason of such liens or suits.

It is understood and agreed that the full and faithful performance of this Agreement on the part of Subcontractor (including the payment of any obligations due from Subcontractor to Contractor, and any amounts due to labor or material men furnishing labor or material for said work) is a condition precedent to Subcontractor's right to receive payment for the work performed, and any monies paid by Contractor to Subcontractor under the terms of this Agreement shall be impressed with a trust in favor of labor and material men furnishing labor and material to Subcontractor on the work herein subcontracted.

Should this subcontractor ever place a Lien, Stop Notice or Miller Act Stop Notice against Contractor for any reason, Subcontractor shall take responsibility for all costs associated with this lien and all Contractors administration costs plus reasonable overhead and profit associated to remove lien from the project.

## SECTION 10. PROVISIONS FOR INSPECTION

Subcontractor shall at all times furnish to Contractor and his representatives safe and ample facilities for inspecting materials at the site of construction, shops, factories or any place of business of Subcontractor and his subcontractors and material men where materials under this Agreement may be in course of preparation, process, manufacture or treatment. Subcontractor shall furnish to Contractor, as often as required by Contractor, full reports of the progress of the work at any place where material under this Agreement may be in the course of preparation or manufacture. Such reports shall show the progress of such preparation and manufacture in such details as may be required by Contractor, including, but not limited to, any plans, drawings or diagrams in the course of preparation.

## SECTION 11. MATERIALS AND WORK FURNISHED BY OTHERS

In the event the scope of work includes installation of materials or equipment furnished by others or work to be performed in areas to be constructed or prepared by others, it shall be the responsibility of Subcontractor to examine and accept, at the time of delivery or first access, the items so provided and thereupon handle, store and install the items with such skill and care as to insure a satisfactory completion of the work. Use of such items or commencement of work by Subcontractor in such areas shall be deemed to constitute acceptance thereof by Subcontractor. Loss or damage due to acts of Subcontractor shall be charged to the account of Subcontractor and deducted from monies otherwise due under this Agreement.

## SECTION 12. PROTECTION OF WORK

Subcontractor shall effectually secure and protect the work done hereunder and assume full responsibility for the condition thereof until final acceptance by Architect, Owner and Contractor. Subcontractor further agrees to provide such protection as is necessary to protect the work and the workmen of Contractor, Owner and other subcontractors from his operations.

Subcontractor shall be liable for any loss or damage to any work in place or to any equipment and materials on the jobsite caused by him or his agents, employees or guests.

## SECTION 13. SUPERINTENDENCE OF WORK

Subcontractor shall supervise his work or appoint someone to supervise all on site work. Supervision must be maintained 100% for the duration of subcontractors work. Subcontractor shall provide the name and contact information of the superintendent upon start of work.

## SECTION 14. LABOR RELATIONS

14.1    Subcontractor shall keep a representative at the jobsite during all times when Subcontractor's work is in progress, and such representative shall be authorized to represent Subcontractor as to all phases of the work. Prior to commencement of the work, Subcontractor shall notify Contractor who Subcontractor's representative is to be, and in the event of any change of representative Subcontractor shall notify Contractor who the new representative is to be prior to such change becoming effective.

Subcontractor acknowledges that Contractor has entered into labor agreements covering work at his construction job sites with the labor unions listed in Section 26 below and incorporated herein by reference.

Subcontractor agrees to comply with all of the terms and conditions of those labor agreements including trust fund payment into the respective labor trust funds set forth in the respective labor agreements, referred to in Section 25 below insofar as Subcontractor may lawfully do so, and in particular agrees to comply with the terms and provisions of said agreements setting forth the jurisdiction and scope of work claimed by each of such crafts and the procedure contained therein for resolution of jurisdictional disputes. In the absence of any such procedure, or if such procedure fails to promptly resolve the jurisdictional dispute, Subcontractor agrees, at his own cost and expense, upon request of Contractor, to take any and all lawful steps to secure a binding and final determination of said jurisdictional dispute by the National Labor Relations Board.

1315060.2

Subcontractor acknowledges that terms and conditions of the labor agreements with the unions listed herein below may require that Subcontractor comply with additional labor agreements with unions affiliated with the AFL-CIO but not listed. When the terms and conditions of the below-referenced labor agreements so require, Subcontractor shall perform his jobsite work pursuant to all terms and conditions of an appropriate labor agreement with a union affiliated with the AFL-CIO.

Should there be picketing on Contractor's jobsite, and Contractor establishes a reserved gate for Subcontractor's purpose, it shall be the obligation of Subcontractor to continue the proper performance of his work without interruption or delay.

Subcontractor further promises and agrees that he will bind and require all of his subcontractors and their subcontractors performing jobsite work of the type covered by any of the labor agreements specified below to agree to all of the foregoing promises and undertakings, to the same effect as herein provided with respect to him.

14.2    Subcontractor shall comply with all equal employment opportunity and affirmative action requirements promulgated by any governmental authority, including, without limitation, the requirements of the Civil Rights Act of 1964.

14.3    Subcontractor shall comply with and agrees to be bound by all applicable Federal, State and local laws and regulations, including, but not limited to, all Fair Labor Standards Act provisions and California Labor Code provisions covering the work. Upon request, Subcontractor agrees to submit certified payroll reports to Contractor no later than three (3) working days after labor has been paid.

# SECTION 15.  RECOURSE BY CONTRACTOR

15.1    Failure of Performance

15.1.1    Notice to Cure. If Subcontractor at any time refuses or neglects to supply enough properly skilled workers and proper materials, or fails to properly and diligently prosecute the work covered by this Agreement, or fails to make prompt payment to his workers, sub-subcontractors or suppliers, or becomes delinquent with respect to contributions or payments required to be made to any health and welfare, pension, vacation, apprenticeship or other employee benefit program or trust, or is otherwise guilty of a material breach of a provision of this Agreement, and fails within forty-eight (48) hours after receipt of written notice to commence and continue satisfactory correction of such default with diligence and promptness, then Contractor, without prejudice to any rights or remedies, shall have the right to any or all of the following remedies:

(a)    Supply such number of workers and quantity of materials, equipment and other facilities as Contractor deems necessary for the completion of Subcontractor's work, or any part thereof which Subcontractor has failed to complete or perform, and charge the cost thereof to Subcontractor, who shall be liable for the payment of same including reasonable overhead, profit, and actual attorneys' fees incurred as a result of Subcontractor's failure of performance;

(b)    Contract with one or more additional contractors to perform such part of Subcontractor's work as Contractor shall determine will provide the most expeditious completion of the total work and charge the cost thereof to Subcontractor; and

(c)    Withhold payment of any monies due Subcontractor pending corrective action to the extent required by and to the satisfaction of Contractor.

In the event of an emergency affecting the safety of persons or property, Contractor may proceed as above without notice.

15.1.2    Termination for Default. If Subcontractor fails to commence and satisfactorily continue correction of a default within forty-eight (48) hours after receipt by Subcontractor of the notice issued under Section 15.1.1, then Contractor may terminate Subcontractor's right to perform under this Agreement and use any materials, implements, equipment, appliances or tools furnished by or belonging to Subcontractor to complete Subcontractor's work without any further compensation to Subcontractor for such use. Contractor also may furnish those materials and equipment, and/or employ such workers or subcontractors as Contractor deems necessary to maintain the orderly progress of the work.

In such case, Subcontractor shall be entitled to no further payment until the balance of Subcontractor's work has been completed. At that time, all of the costs incurred by Contractor in performing Subcontractor's work, including a markup of fifteen percent (15%) for overhead and profit on such expenses, plus actual attorneys' fees as provided above, shall be deducted from any monies due or to become due Subcontractor. Subcontractor shall be liable for the payment of any amount by which such expenses may exceed the unpaid balance of the Contract Price.

15.1.3    Termination for Convenience. Contractor may at any time and for any reason terminate Subcontractor's services and work at Contractor's convenience. Cancellation shall be by service of written notice to Subcontractor's place of business.

Upon receipt of such notice, Subcontractor shall, unless the notice directs otherwise, immediately discontinue the work and placing of orders for materials, facilities and supplies in connection with the performance of this Agreement, and shall, if requested, make every reasonable effort to procure cancellation of all existing orders or contracts upon terms satisfactory to Contractor, or at the option of Contractor, give Contractor the right to assume those obligations directly, including all benefits to be derived therefrom. Subcontractor shall thereafter do only such work as may be necessary to preserve and protect the work already in progress and to protect material and equipment on the jobsite or in transit thereto.

Upon such termination, Subcontractor shall be entitled to payment in accordance with Section 4 only as follows: (1) the actual cost of the work completed in conformity with this Agreement, plus (2) such other costs actually incurred by Subcontractor as are permitted by the prime contract and approved by Owner, plus (3) overhead and profit as defined in the specifications or if not defined in the specifications no more than (5%) for overhead and profit. There shall be deducted from such sums as provided in this subparagraph the amount of any payments made to Subcontractor prior to the date of the termination of this Agreement. Subcontractor shall not be entitled to any claim or claim of lien against Contractor or Owner for any additional compensation or damages in the event of such termination and payment.

15.1.4   Grounds for Withholding Payment. Contractor may withhold, or on account of subsequently discovered evidence, nullify the whole or part of any payment to the extent necessary to protect Contractor from loss, including costs and attorneys' fees, on account of (1) defective work not remedied; (2) claims filed or reasonable evidence indicating probable filing or claim; (3) failure of Subcontractor to make payments properly to its subcontractors or for material, labor or fringe benefits; (4) a reasonable doubt that this Agreement can be completed for the balance then unpaid; (5) damage to another subcontractor; (6) penalties assessed against Contractor or Subcontractor for failure of Subcontractor to comply with State, Federal or local laws and regulations; or (7) any other ground for withholding payment allowed by State or Federal law, or as otherwise provided in this Agreement. When the above matters are rectified, such amounts as then due and owing shall be paid or credited to Subcontractor.

15.2   Bankruptcy

15.2.1   Termination Absent Cure. Upon the appointment of a receiver for Subcontractor or upon Subcontractor making an assignment for the benefit of creditors or if Subcontractor seeks protection under the Bankruptcy Code or commits any other act of insolvency, Contractor may terminate this Agreement upon giving forty-eight (48) hours written notice, by certified mail, to Subcontractor and its surety, if any. If an order for relief is entered under the Bankruptcy Code with respect to Subcontractor, Contractor may terminate this Agreement by giving forty-eight (48) hours written notice, by certified mail, to Subcontractor, its trustee, and its surety, if any, unless Subcontractor, the surety, or the trustee:

(a)   Promptly cures all defaults;
(b)   Provides adequate assurance of future performance;
(c)   Compensates Contractor for actual pecuniary loss resulting from such defaults; and
(d)   Assumes the obligations of Subcontractor within the statutory time limits.

15.2.2   Interim Remedies. If Subcontractor is not performing in accordance with the schedule of work at the time of entering an order for relief, or at any subsequent time, Contractor, while awaiting the decision of Subcontractor or its trustee to reject or to accept this Agreement and provide adequate assurance of its ability to perform hereunder, may avail itself of such remedies under this Section as are reasonably necessary to maintain the schedule of work.

Contractor may offset against any sums due or to become due Subcontractor all costs incurred in pursuing any of the remedies provided hereunder, including, but not limited to, reasonable overhead, profit and actual attorneys' fees incurred as a result of Subcontractor's non-performance.

Subcontractor shall be liable for the payment of any amount by which such expense may exceed the unpaid balance of the Contract Price.

## SECTION 16. INDEMNIFICATION

16.1   Subcontractor's Performance. With the exception that this Section 16 shall in no event be construed to require indemnification by Subcontractor to a greater extent than permitted under the public policy of the State of California, Subcontractor shall indemnify and save harmless Owner and Contractor, including their officers, agents, employees, affiliates, parents and subsidiaries and each of them, of and from any and all claims, demands, causes of action, damages, costs, expenses, actual attorneys' fees, losses or liability, in law or in equity, of every kind and nature whatsoever ("Claims") arising out of or in connection with Subcontractor's operations to be performed under this Agreement for, but not limited to:

(a)   Personal injury, including, but not limited to, bodily injury, emotional injury, sickness or disease, or death to persons,

1375069.2

8

including, but not limited to, any employees or agents of Subcontractor, Owner, Contractor, or any other subcontractor and/or damage to property of anyone (including loss of use thereof), caused or alleged to be caused in whole or in part by any negligent act or omission of Subcontractor or anyone directly or indirectly employed by Subcontractor or anyone, for whose acts Subcontractor may be liable regardless of whether such personal injury or damage is caused by a party indemnified hereunder.

(b)    Penalties imposed on account of the violation of any law, order, citation, rule, regulation, standard, ordinance or statute, caused by the action or inaction of Subcontractor.

(c)    Infringement of any patent rights, which may be brought against the Contractor or Owner arising out of Subcontractor's work.

(d)    Claims and liens (See Section 9) for labor performed or materials used or furnished to be used on the job, including all incidental or consequential damages resulting to Contractor or Owner from such claims or liens.

(e)    Subcontractor's failure to fulfill the covenants set forth in each subpart of Section 14, Labor Relations.

(f)    Failure of Subcontractor to comply with the provisions of Section 17.1, Casualty Insurance.

(g)    Any violation or infraction by Subcontractor of any law, order, citation, rule, regulation, standard, ordinance or statute in any way relating to the occupational health or safety of employees, including, but not limited to, the use of Contractor's or other's equipment, hoist, elevators, or scaffolds (See Sections 17 and 21).

The indemnification provisions of (a) through (g) above shall extend to Claims occurring after this Agreement is terminated as well as while it is in force. Such indemnity provisions apply regardless of any active and/or passive negligent act or omission of Owner or Contractor or their agents or employees. Subcontractor, however, shall not be obligated under this Agreement to indemnify Owner or Contractor for Claims arising from the sole negligence or willful misconduct of Owner or Contractor or their agents, employees or independent contractors who are directly responsible to Owner or Contractor, or for defects in design furnished by such persons.

16.1.1    Subcontractor shall:

(a)    At Subcontractor's own cost, expense and risk, defend all Claims as defined in Section 16.1 that may be brought or instituted by third persons, including, but not limited to, governmental agencies or employees of Subcontractor, against Contractor or Owner or their agents or employees or any of them;

(b)    Pay and satisfy any judgment or decree that may be rendered against Contractor or Owner or their agents or employees, or any of them, arising out of any such claim; and/or

(c)    Reimburse Contractor or Owner or their agents or employees for any and all legal expense incurred by any of them in connection herewith or in enforcing the indemnity granted in this Section 16.

16.2    Risk of Loss

All work covered by this Agreement done at the site or in preparing or delivering materials or equipment, or any or all of them, to the site shall be at the risk of Subcontractor exclusively until the completed work is accepted by Contractor.

16.3    No Limitation of Liability

The indemnities set forth in this Section 17 shall not be limited by the insurance requirements set forth in Section 17.

# SECTION 17. INSURANCE

17.1    Casualty Insurance

Subcontractor shall, at his expense, procure and maintain insurance on all of his operations, in companies acceptable to Contractor, and in accordance with Far Clause 52.0228-4502 minimum insurance required as follows:

17.1.1    Workers' Compensation and Employer's Liability Insurance.  Workers' Compensation Insurance shall be provided as required by any applicable law or regulation. Employer's Liability Insurance shall be provided in amounts not less than:

$1,000,000 each accident for bodily injury by accident
$1,000,000 policy limit for bodily injury by disease
$1,000,000 each employee for bodily injury by disease

If there is an exposure of injury to Subcontractor's employees under the U.S. Longshoremen's and Harbor Workers' Compensation Act, the Jones Act or under laws, regulations or statutes applicable to maritime employees, coverage shall be included for such injuries or claims.

17.1.2    General Liability Insurance.  Subcontractor shall carry Comprehensive General Liability or Commercial General Liability

insurance covering all operations by or on behalf of Subcontractor providing insurance for bodily injury liability and property damage liability for the limits of liability indicated below and including coverage for:

    (1)    Premises and operations;
    (2)    Products and completed operations;
    (3)    Contractual liability insuring the obligations assumed by Subcontractor in this Agreement;
    (4)    Broad form property damage (including completed operations);
    (5)    Explosion, collapse and underground hazards; and
    (6)    Personal injury liability.

Except with respect to bodily injury and property damage included within the products and completed operations hazards, the aggregate limit, where applicable, shall apply separately to Subcontractor's work under this Agreement.

One of the following coverage forms is required:

- Comprehensive General Liability
- Commercial General Liability (Occurrence)
- Commercial General Liability (Claims Made)

17.1.2.1   Subcontractor shall carry a Comprehensive General Liability policy, the limits of liability shall not be less than a combined single limit for bodily injury, property damage and personal injury liability of: $1,000,000 each occurrence; $1,000,000 aggregate. Contractor, his officers, directors and employees and Owner shall be named as additional insured under the Comprehensive General Liability insurance policy. The policy shall stipulate that the insurance afforded the additional insured shall apply as primary insurance and that any other insurance carried by Contractor, his officers, directors and employees or Owner will be excess only and will not contribute with this insurance.

17.1.3   Automobile Liability Insurance.   Subcontractor shall carry automobile liability insurance, including coverage for all owned, hired and non-owned automobiles. The limits of liability shall be not less than $1,000,000 combined single limit each accident for bodily injury and property damage.

17.1.4   Certificates of insurance, as evidence of the insurance required by this Agreement, shall be furnished by Subcontractor to Contractor before any work hereunder is commenced by Subcontractor. The certificates of insurance shall provide that there will be no cancellation or reduction of coverage without thirty (30) days prior written notice to Contractor.

17.1.5   Contractor may take such steps as are necessary to assure Subcontractor's compliance with his obligations under this Section 16. In the event Subcontractor fails to maintain any insurance coverage required under this Agreement, Contractors may maintain such coverage and charge the expense to Subcontractor, or terminate this Agreement.

17.1.6   The required insurance shall be subject to the approval of Contractor, but any acceptance of insurance certificates by Contractor shall in no way limit or relieve Subcontractor of the duties and responsibilities by him in this Agreement. If higher limits or other forms of insurance are required in the Contract Documents, Subcontractor will comply with such requirements.

17.4   Failure of contractor to enforce in a timely manner any of the provisions of this Section 17 shall not act as a waiver to enforcement of any of these provisions at a later date in the performance of this Agreement. Any exceptions to the provisions of this Section 17 must be delineated in the Contract Documents.

## SECTION 18.  CLAIMS RESOLUTION PROCEDURE

    18.1    Agreement to Arbitrate

All claims, disputes and matters in question arising out of, or relating to this Agreement or the breach thereof, except for claims which have been waived by the making or acceptance of final payment, shall be decided by the claims procedure, including any arbitration clause, specified in the prime contract between Contractor and Owner. In the absence of an agreement to arbitrate in the prime contract, no claims or disputes shall be arbitrated unless provided for in this Agreement or mutually agreed upon by Contractor and Subcontractor in writing.

    18.2    Arbitration Procedures (if applicable)

In the event the prime contract contains an arbitration provision or if arbitration is provided for in this Agreement, the following

shall apply:

18.21.   Notice of Demand.  Notice of the demand for arbitration shall be filed in writing with the other party to this Agreement and shall conform to the requirements of the arbitration provision set forth in the prime contract.  The demand for arbitration shall be made within a reasonable time after written notice of the claim, dispute or other matter in question has been given, and in no event shall it be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations.

18.2.   Award.  The award rendered by the arbitrator(s) shall be final and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction.

18.2.3   Work Continuation and Payment.  Unless otherwise agreed in writing, Subcontractor shall carry on the work and maintain the schedule of work pending arbitration, and, if so, Contractor shall continue to make payments in accordance with this Agreement.

18.2.4   Consolidated Arbitration Proceedings.  To the extent not prohibited by their contracts with others, the claims and disputes of Owner, Contractor, Subcontractor and other subcontractors involving a common question of fact or law shall be heard by the same arbitrator(s) in a single proceeding.  In this event, it shall be the responsibility of Subcontractor to prepare and present Contractor's case, to the extent the proceedings are related to this Agreement.  Should Contractor enter into arbitration with the Owner or others regarding matters relating to this Agreement, Subcontractor shall be bound by the result of the arbitration to the same degree as the Contractor.

18.2.5   No Limitation of Rights or Remedies.  This Section shall not be deemed a limitation of any rights or remedies which Subcontractor may have under any Federal or State mechanics' lien laws or under any applicable labor and material payment bonds unless such rights or remedies are expressly waived by him.

18.2.6   Jurisdictional Disputes.

a)      The Subcontractor accepts and agrees to be bound by the procedural rules and regulations and decisions of the appropriate tribunals specified in the appropriate labor agreements for the settlement of jurisdictional disputes and will immediately comply with any decisions of said tribunals, which affect the performance of work covered by the Subcontract.  Subcontractor agrees to bind, by written contract, all of his subcontractors of every tier to all procedural rules and regulation and decisions of said tribunals in the same manner and to the same effect as provided herein with respect to Subcontractor.

b)      During the performance of Subcontractor's Work, the Subcontractor, its employees, Sub-Subcontractor's and suppliers will use such entrances to the job as maybe designated from time to time by the Contractor.

## SECTION 19.  SAFETY PRACTICES

Subcontractor shall comply fully with all laws, orders, citations, rules, regulations, standards and statutes with respect to occupational health and safety, the handling and storage of hazardous materials, accident prevention, safety equipment and practices including the accident prevention and safety program of Owner and Contractor.  Subcontractor shall conduct inspections to determine that safe working conditions and equipment exist and accepts sole responsibility for providing a safe place to work for its employees and for employees of its subcontractors and suppliers of material and equipment, for adequacy of and required use of all safety equipment and for full compliance with the aforesaid laws, orders, citations, rules, regulations, standards and statutes.

## SECTION 20.  WARRANTY

Subcontractor warrants to Owner, Architect and Contractor that all materials and equipment furnished shall be new unless otherwise specified and that all work under this Agreement shall be of good quality, free from faults and defects and in conformance with the Contract Documents.  All work not conforming to these requirements, including substitutions not properly approved and authorized, may be considered defective.  The warranty provided in this Section 20 shall be in addition to and not in limitation of any other warranty or remedy required by law or by the Contract Documents.

## SECTION 21.  USE OF CONTRACTOR'S EQUIPMENT

In the event Subcontractor shall use Contractor's equipment, materials, labor, supplies or facilities, Subcontractor shall reimburse Contractors at a predetermined rate, except as provided in Section 15.1.2 or as otherwise stated herein.  Further, Subcontractor assumes all responsibility for physical damage to such equipment, materials, labor, supplies, or facilities used by Subcontractor, Subcontractor shall have full responsibility for all acts or omissions of Contractor's employees with regard to Subcontractor's use or employment of them.  Subcontractor accepts any and all of Contractor's equipment, materials, labor, supplies or facilities as furnished.  Subcontractor shall also indemnify Contractor, General Contractor and Owner to the same extent as listed in Section 16 above.

## SECTION 22.  ASSIGNMENT OF CONTRACT

Subcontractor shall not, without written consent of Contractor, assign, transfer, or sublet any portion or part of the work required by

this Agreement, or assign any payment hereunder to others.

## SECTION 23. INDEPENDENT CONTRACTOR

Subcontractor is an independent contractor and shall, at his sole cost and expense, and without increase in the Contract Price, comply with all laws, rules, ordinances and regulations of all governing bodies having jurisdiction over the work; obtain all necessary permits and licenses therefore, all USA layout Permits (for any Underground Work, separate from Contractors USA permit or layout), pay all manufacturers' taxes, sales taxes, use taxes, processing taxes, and all federal and state taxes insurance and contributions for social security and unemployment which are measured by wages, salaries, or other remunerations paid to Subcontractor's employees, whether levied under existing or subsequently enacted laws, rules or regulations. Subcontractor, upon request, shall furnish evidence satisfactory to Contractor that any or all of the foregoing obligations have been fulfilled.

## SECTION 24. CLEAN-UP

At all times during the course of construction, Subcontractor shall perform his work so as to maintain the site in a clean, safe and orderly condition. Upon completion of the work under this Agreement, Subcontractor shall remove from the site all hazardous materials, temporary structures, debris and waste incident to his operation and clean all surfaces, fixtures, equipment, etc, relative to the performance of this Agreement.

## SECTION 25. ATTORNEYS' FEES

In the event the parties become involved in litigation or arbitration with each other arising out of this Agreement or other performance thereof in which the services of an attorney or other expert are reasonably required, each party shall bear its own fees and costs. Further, both Contractor and Subcontractor hereby waive any right to recover fees existing under any statute, law, or contract.

## SECTION 26. LABOR AGREEMENTS (List labor agreements to which Contractor is signatory or enter NONE if Contractor has no labor agreements.)

## SECTION 27. SPECIAL PROVISIONS (Including unit pricing, if applicable)
Subcontractor shall not enter any job site until K.O.O. Construction, Inc. has received the appropriate insurance certificates according to Section 17 of this Subcontract Agreement.

## CONTRACTORS ARE REQUIRED BY LAW TO BE LICENSED AND REGULATED BY THE CONTRACTORS STATE LICENSE BOARD. ANY QUESTIONS CONCERNING A CONTRACTOR MAY BE REFERRED TO THE REGISTRAR OF THE BOARD, WHOSE ADDRESS IS:

Contractors State License Board
Post Office Box 26000
Sacramento, California 95826

Dated: 5 July 2017

CONTRACTOR:
**K.O.O. CONSTRUCTION, INC**

By _____
(Keith O. Odister)

2510 Boatman Avenue

West Sacramento, CA 95691
(Address)

560169
(Contractor's License No.)

Dated: 6/30/17

SUBCONTRACTOR:
**Civil Prime General Engineering, Inc**

By: _____
Jason Burton

1940 54th Street

San Diego, CA
(Address)

_____
(Contractor's License No.)

 **General Engineering, Inc.**

License No. 1004300

June 26, 2017       *REVISED*                            DIR # 1000024926

Attn: Jose Cardenas

As requested we submit the following REVISED cost proposal for the Clear and Grub, Re-spread Topsoil, Demolition, Earthwork, Class II Base, D.G. Installation and Rip Rap Installation for the P-888 CQC and Shooting Facility located at Camp Michael Monsoor, Pine Valley, CA. Civil Plans by BDS Engineering IFC Drawings Dated Feb. 27, 2017.

| Item | Description | Quantity | Unit Cost | Total |
|---|---|---|---|---|
| Item 1 | Mobilization | 1 | L.S. | $118,000.00 |
| Item 2 | Clear and Grub, Demo. (Includes Well Sites) | 1 | L.S. | $32,300.00 |
| Item 3 | Remedial Excavation (Includes CQC Building) | 9,070 cyd | $ 6.52 | $59,149.00 |
| Item 4 | Common Excavation (Includes Stockpiling) | 44,417 cyd | $ 5.15 | $228,748.00 |
| Item 5 | Select Fill Slope Pistol Range/Rifle Range | | L.S. | $16,000.00 |
| Item 6 | Finish Grade (Includes Re-spread Topsoil) | | L.S. | $526,590.00 |
| Item 7 | Rip Rap Channels (4,961 cyd X 1.62 yds/ton) | 8,037 tons | $ 78.80 | $633,315.00 |
| Item 8 | Install D.G. | 1,710 tons | $ 34.20 | $58,482.00 |
| Item 9 | Install Class II Aggregate Base | 3,914 tons | $ 38.49 | $150,650.00 |
| | | | SUBTOTAL | $1,320,434.00 |

**\*Additive Alternate\***

| | | | | |
|---|---|---|---|---|
| Add Alt. Expose, Cap, Excavate, Stockpile and Backfill | | 3,200 cyd | $11.32 | $36,224 |
| Add Alt. Sort Rock For Onsite Use | | 3,200 cyd | $10.57 | $33,824 |
| Baxter Blasting per K.O.O | | Budget | $50,000.00 | |
| | | | TOTAL | $1,390,482.00 |

*Exclusions* (For Above Items) Survey, Permits, Soil Testing, Traffic Control, Erosion Control, Bonds, Dewatering, Locate, Relocate, Cut, or Cap of Any Utilities Wet or Dry, Handling or Disposal of Any Hazardous Materials, Any special handling of soils deemed unsuitable by appointed soils firm, Blasting, Shoring, Safe-Off of Structures or utilities, Sub-Terrain Debris, Trash, etc. Export or import of soils. The Handling of Other Trade Spoils, Water meter or development of Construction water. Proposal Price for Earthwork is based on an Adequate Water Supply of 50,000 Gallons per Day.

*Re-spread Topsoil does NOT include any slopes steeper than a 2:1 Ratio.

This Proposal includes all Labor, Materials and Mobilizations per Scope of Work Listed Above. Progress payments to be made within 30 days of invoice date. Final payments to be made within 30 days of completion of proposed contract.
Thank You,

Jason Burton,
Civil Prime General Engineering, Inc.

1940 54th Street, San Diego, CA
Phone (619) 501-0400 • Fax (619)501-0402

# EXHIBIT 2

Bond Number: CA6959660 - Premium is included in the Performance Bond

| PAYMENT BOND<br>(See Instructions on reverse) | DATE BOND EXECUTED (Must be same or later than date<br>of contract)   10/08/2014 | OMB No.: 9000-0045 |
|---|---|---|

Public reporting burden for this collection of information is estimate to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (MVR), Federal Acquisition Policy Division, GSA, Washington, DC 20405

| PRINCIPAL (Legal name and business address) | TYPE OF ORGANIZATION ("X" one) | | |
|---|---|---|---|
| K.O.O. Construction, Inc.<br>2510 Boatman Avenue<br>West Sacramento, CA 95691 | INDIVIDUAL | | PARTNERSHIP |
| | JOINT VENTURE | X CORPORATION | |
| | STATE OF INCORPORATION<br>California | | |

| SURETY(IES) (Name(s) and business address(es)) | PENAL SUM OF BOND | | | |
|---|---|---|---|---|
| Great American Insurance Company | MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENT(S) |
| 301 E. Fourth Street<br>Cincinnati, OH 45202 | ***12 | 489 | 000 | 00 |
| | CONTRACT DATE<br>09/30/14 | CONTRACT NO.<br>N62473-09-D-1655<br>Task Order #0003 | | |

**OBLIGATION:**

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit is indicated, the limit of liability is the full amount of the penal sum.

**CONDITIONS:**

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

**WITNESS:**

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

| PRINCIPAL | | | | |
|---|---|---|---|---|
| SIGNATURE(S) | 1.              (Seal) | 2.              (Seal) | 3.              (Seal) | Corporate<br>Seal |
| NAME(S) &<br>TITLE(S)<br>(Typed) | 1. Keith Odister<br>President/CEO | 2. | 3. | |

| INDIVIDUAL SURETY(IES) | | |
|---|---|---|
| SIGNATURE(S) | 1.              (Seal) | 2.              (Seal) |
| NAME(S)<br>(Typed) | 1. | 2. |

| | CORPORATE SURETY(IES) | | | |
|---|---|---|---|---|
| SURETY A | NAME &<br>ADDRESS | Great American Insurance Company<br>301 E. Fourth Street, Cincinnati, OH 45202 | STATE OF INC.<br>Ohio | LIABILITY LIMIT<br>$ 146,964,000.00 |
| | SIGNATURE(S) | 1. | 2. | Corporate<br>Seal |
| | NAME(S) &<br>TITLE(S)<br>(Typed) | 1. Sandra R. Black, Attorney-in-Fact | 2. | |

AUTHORIZED FOR LOCAL REPRODUCTION<br>Previous edition is usable

STANDARD FORM 25A (REV. 10-98)<br>Prescribed by GSA — FAR (48 CFR) 53.228(c)

## CORPORATE SURETY(IES) (Continued)

| | | | STATE OF INC. | LIABILITY LIMIT $ | |
|---|---|---|---|---|---|
| **SURETY B** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY C** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY D** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY E** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY F** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| **SURETY G** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |

## INSTRUCTIONS

1. This form, for the protection of persons supplying labor and material, is used when a payment bond is required under the Act of August 24, 1935, 49 Stat. 793 (40 U.S.C. 270a-270e). Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitation listed therein. Where more than one corporate surety is involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space designated "SURETY(IES)" on the face of the form, insert only the letter identification of the sureties.

(b) Where individual sureties are involved, a complete Affidavit of Individual Surety (Standard Form 28) for each individual surety, shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning their financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the word "Corporate Seal," and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

STANDARD FORM 25A (REV. 10-98) BACK

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

STATE OF CALIFORNIA

County of  Callfornia                                      }

On  10/8/14              before me, E. Johnson                              , Notary Public,
       Date                              Insert Name of Notary exactly as it appears on the official seal

personally appeared  Sandra R. Black
                                                         Name(s) of Signer(s)

E. JOHNSON
COMM. #1954775
NOTARY PUBLIC • CALIFORNIA
SACRAMENTO COUNTY
Comm. Exp. OCT. 15, 2015

Place Notary Seal Above

who proved to me on the basis of satisfactory evidence to
be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies),
and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of
the State of California that the foregoing paragraph is true
and correct.

Witness my hand and official seal.

Signature  E. Johnson
                  Signature of Notary Public

----------- OPTIONAL -----------

*Though the information below is not required by law, it may prove valuable to persons relying on the document
and could prevent fraudulent removal and reattachment of the  form to another document.*

**Description of Attached Document**

Title or Type of Document: _____

Document Date: _____          Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: Sandra R. Black
☐ Individual
☐ Corporate Officer —— Title(s): _____
☐ Partner   ☐ Limited ☐ General
☑ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

Signer is Representing:
Great American Insurance
Company

Signer's Name: _____
☐ Individual
☐ Corporate Officer —— Title(s): _____
☐ Partner   ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

Signer is Representing:



# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| UNITED STATES OF AMERICA for the use and benefit of CIVIL PRIME GENERAL ENGINEERING, INC., a California corporation | GREAT AMERICAN INSURANCE COMPANY, an Ohio corporation; K.O. CONSTRUCTION, INC., a California corporation |

| (b) County of Residence of First Listed Plaintiff | | County of Residence of First Listed Defendant  Hamilton County |
|---|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | | NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

**'19CV0428 GPC NLS**

| (c) Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| P. Randolph Finch/Jon F.Gauthier/Thomas E. Diamond (858) 737-3100 Finch, Thornton & Baird, LLP 4747 Executive Drive, Suite 700, San Diego, California 92121 | Colin K. McCarthy, Esq. (714) 620-2350 Lanak & Hanna, PC 625 The City Drive South, Suite 190, Orange, California 92868 |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question
*(U.S. Government Not a Party)*

☐ 2 U.S. Government Defendant

☐ 4 Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☒ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' | Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | Liability | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans | ☐ 340 Marine | Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | | | ☐ 791 Employee Retirement Income Security Act | | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from Another District *(specify)*  ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
40 U.S.C. 3131-3133

Brief description of cause:
Recovery on Miller Act Payment Bond, Breach of Contract, and Reasonable Value

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
505,595.16

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____  DOCKET NUMBER _____

DATE
03/04/2019

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.